IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **WOLF CREEK RAILROAD LLC,** | ) Case No. _____ |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **AMERICAN ORDNANCE LLC,** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff Wolf Creek Railroad LLC ("Plaintiff"), for its Complaint against Defendant American Ordnance LLC ("Defendant"), alleges as follows:

## NATURE OF ACTION

1. In 2018, Plaintiff entered into a Tenant Use Agreement ("TUA") with Defendant, to use a portion of the Milan Army Ammunition Plant ("MLAAP"), in Milan, Tennessee for the operation of a railyard and rail facilities.

2. Defendant was party to a Facility Contract and Basic Ordering Agreement (defined further below) with the U.S. Army Joint Munitions Command (the "Army" or "Government"), which permitted Defendant to find commercial tenants to use the MLAAP facilities. Under the auspices of these agreements, the Army approved of the TUA with Plaintiff.

3. Plaintiff invested significant resources into its operations at MLAAP when, a year later, the Army decided to decommission the MLAAP facility and, after several further years of uncertainty, Defendant terminated the TUA for convenience effective July 2022.

4. In May 2023, Plaintiff served the Army with a claim for damages resulting from the termination for convenience. On information and belief, Defendant was in regular communications with the Army and was made aware of Plaintiff's claim at that time.

5. The Army has taken the position that only Defendant can vindicate Plaintiff's claim for damages. The Army has succeeded in obtaining dismissal of a lawsuit Plaintiff filed in the U.S. Court of Federal Claims and, although that decision is on appeal before the Federal Circuit Court of Appeals, the Army continues to insist it cannot be directly liable to Plaintiff and that Defendant must pursue a claim for damages on Plaintiff's behalf, not Plaintiff directly.

6. On July 8, 2024, in light of the Army's position, Plaintiff sent a formal notice to Defendant, demanding that Defendant pursue a pass-through claim on Plaintiff's behalf against the Army as required under Part 49 of the Federal Acquisition Regulations (FAR).

7. Defendant has refused to do so. Even though both Defendant and the Army have known about Plaintiff's claim for years, Defendant contends that Plaintiff's claim would be untimely.

8. In addition, Defendant contends that the TUA absolves Defendant from any liability to Plaintiff. In other words, according to Defendant, it was permitted to terminate the TUA at any time for any reason or no reason at all with no financial consequences and Plaintiff is left without any remedy or ability to recoup its expenses incurred in reliance of the TUA from either the Army or Defendant.

9. This action is a matter of fundamental fairness. Defendant's suggestion that no party is liable for the damages Plaintiff suffered as a result of the termination is contrary to the Army's position taken in the Court of Federal Claims and Federal Circuit and would be fundamentally inequitable because it would deprive Plaintiff of any remedy.

10. Further, if Defendant is correct that it could cancel the TUA at any time for convenience without obligation, under Tennessee law (which expressly governs the TUA), the contract would be illusory. At a minimum, Defendant's actions were cabined by its duty of good faith and fair dealing and its failure to assist Plaintiff in recouping its damages from the Army constitutes a breach of this duty.

11. Defendant also violated its obligations under Part 49 of the FAR by failing to pursue settlement of Plaintiff's claim with the Army.

12. And, finally, if Defendant is correct that it had the option to perform or terminate the contract at will, the TUA should be deemed void and Plaintiff is entitled to rescission and restitution.

## PARTIES, JURISDICTION, AND VENUE

13. Plaintiff is a limited liability company organized and existing under the law of the State of Delaware, with a principal place of business located at One Gateway Center, Suite 501B, Newton, MA 02458.

14. Plaintiff's sole member is Eyal Shapira, a citizen of Massachusetts. So, Plaintiff is a citizen of Massachusetts.

15. Defendant is a limited liability company, organized and existing under the laws of the State of Delaware, with a principal place of business located at 17575 Highway 79, Middletown, IA 52638. Defendant maintains a registered agent for service of process c/o C T Corporation System, 300 Montvue Rd, Knoxville, TN 37919-5546.

16. Defendant's sole member is Day & Zimmerman, Inc., a Maryland corporation, with its principal place of business located at 1500 Garden Street, Philadelphia, PA 19130. Thus, Defendant is a citizen of Maryland and Pennsylvania.

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship—Plaintiff is a citizen of Massachusetts and Defendant is a citizen of Maryland and Pennsylvania—and the amount in controversy, as further detailed below, exceeds $75,000 exclusive of interest and costs.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because this action relates to a Tenant Use Agreement for a portion of the Milan Army Ammunition Plant, 2280 Highway 104 West, Milan, Tennessee 38358-3177, in Gibson County, Tennessee, located within the Western District of Tennessee.

**FACTUAL BACKGROUND**

### I. The MLAAP

19. The Milan Army Ammunition Plant ("MLAAP"), located in and around Milan, Tennessee, has a history that dates back to 1941, when the then-Milan Ordnance Depot was first established. This facility was used as an ammunition plant on and off for approximately the ensuing 70 years.

20. In 2008, Defendant entered into an Operations & Maintenance Contract #W52P1J-09-E-0001 (the "Facility Contract"), with the Army to provide the operations and maintenance of MLAAP. Under its contract with the Army, Defendant had use of the government-owned facilities to manufacture ammunition for the Government and other authorized parties.

21. In addition, under the Facility Contract, the Army awarded to Defendant a Basic Ordering Agreement, No. W52P1J-09-G-0001 (the "BOA"), to acquire operation/maintenance services beyond the tasks required by the Facility Contract.

22. In 2012, Defendant relocated all ammunition production to another facility, and MLAAP's production lines were shut down and transferred to inactive status.

23. From 2012 until 2019, MLAAP's mission was to maintain capability to load, assemble, and pack medium-to-large caliber munitions and transfer the plant to a commercial distribution site.

24. At that time, the Army instructed Defendant to find commercial tenants to make use of the facilities at MLAAP.

## II. The Tenant Use Agreement (TUA)

25. In 2017, Defendant, at the direction of the Army, began soliciting commercial companies to use a portion of the MLAAP facilities.

26. At that time, Plaintiff submitted its proposal to lease the railyard and railroad facilities at the MLAAP (the "Property" or "Facilities") and operate it as a rail yard.

27. On April 16, 2018, Defendant, pursuant to its Facility Contract, submitted a Request for Use of the Facilities ("RUF") to the Army.

28. In response to this RUF, the Army approved Plaintiff's proposal, stating:

> Any subsequent contractual arrangement between AO [Defendant] and WCR [Plaintiff] shall be construed to be a TUA [Tenant Use Agreement] in accordance with the terms and conditions of the Armament Retooling and Manufacturing Support (ARMS) Statement of Work (SOW) as incorporated under Basic Ordering Agreement (BOA) Number W52P1J-09-G-0001; a copy of the TUA shall be provided to the Government upon finalization

29. On June 5, 2018, Plaintiff and Defendant executed the TUA, a true and correct copy of which is attached as **Exhibit A**.

30. The TUA had a term of 25 years, with the option for a 25-year extension.

31. Given the length of the term of the TUA, Plaintiff began making substantial capital investments into the Property, including entering into an agreement with Wells Fargo Railroad Corporation, which operates the largest fleet of any rail operating lessor in North America.

### III.     Defendant Terminates the TUA Under Instruction from the Army

32.     A little more than a year later, on August 20, 2019, the Army notified Defendant via letter that it had ended the "current mission needs for the entirety of MLAAP."

33.     This notice also stated Defendant should cease all "Armament Retooling and Manufacturing Support" efforts and cease pursuing new tenants.

34.     Plaintiff remained in limbo for around two years, until April 26, 2021, when the Army first notified Defendant that the TUA would have to be terminated as of December 31, 2021, a date later extended to July 2022.

35.     As a result, Defendant, acting under the Army's express instructions, terminated the TUA for convenience as of July 2022.

### IV.     Plaintiff's Claim to the Army

36.     Ten months later, on May 30, 2023, Plaintiff submitted a certified claim letter to the Army seeking recovery of damages for the Army's termination of the contract for convenience.

37.     The BOA, under which Defendant negotiated and entered into the TUA with Plaintiff, incorporated by reference Parts 30, 31, and 49 of the Federal Acquisition Regulations (FAR), codified at Title 48 of the Code of Federal Regulations, which governs, among other things, payments by the Government following termination of a contract for convenience.

38.     Plaintiff's claim to the Army sought approximately $2.6 million in costs recoverable under the FAR, including proposal and preparatory costs, capital improvement costs, costs associated with settling a claim with Wells Fargo Rail Corporation, and termination and departure costs.

39.     Upon information and belief, Defendant, which was in regular contact and communications with the Army about the MLAAP, was made immediately aware of Plaintiff's

claim to the Army and declined to prosecute the claim or assist Plaintiff in its efforts in recovering from the Army.

40. The Army did not respond to Plaintiff's claim even though Plaintiff resubmitted it on several occasions throughout 2023.

41. On September 29, 2023, having received no response from the Army, Plaintiff filed an action in the U.S. Court of Federal Claims (the "Claims Court") against the Army, which was assigned Docket No. 23-cv-1684-CNL.

42. In the Claims Court, the Army took the position that Plaintiff, as a "sub-contractor" lacks standing to pursue a claim directly against the Government and must instead pursue its remedies against Defendant.

43. On March 26, 2024, the Claims Court granted a motion by the Government to dismiss Plaintiff's Complaint, finding, among other things, that relevant precedent precluded Plaintiff from pursuing a claim directly against the Government.

44. Plaintiff has appealed the Claims Court judgment to the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit"), which was assigned Docket No. 24-1873.

45. The Federal Circuit appeal has now been fully briefed by Plaintiff and the Government. In its briefing, the Government continues to press its position that Defendant "and not the Army, is responsible for negotiating settlement agreements with tenant use contractors such as [Plaintiff]." (Brief for United States at 24, Wolf Creek Railroad, LLC v. United States, No. 2024-1873 (Fed. Cir. filed Sept. 25, 2024) (Doc. 21).)

### V. Defendant Refuses to Submit or Pursue Plaintiff's Pass-Through Claim

46. Upon information and belief, Defendant has been aware of Plaintiff's claims submission to the Army throughout the process, beginning as early as May 2023.

47. Plaintiff continues to believe that the Army remains directly liable to it and has diligently pursued this claim administratively and in the Claims Court and Federal Circuit.

48. However, given the Army's position and the Claims Court's ruling, on July 8, 2024, Plaintiff, through counsel, wrote to Defendant and demanded that Defendant submit a pass-through claim to the Army.

49. Plaintiff submitted detailed information showing that its damages now totaled more than $3 million.

50. Given the Government's express position that Defendant was the party that must pursue settlement of Plaintiff's claim under FAR Part 49, Plaintiff demanded that Defendant submit such claim.

51. On October 11, 2024, counsel for Defendant responded to Plaintiff's letter by email, declining to submit a claim on behalf of Plaintiff because, according to Defendant, the FAR requires such a claim to be submitted within 1 year of the termination. Upon information and belief, Defendant has been aware of Plaintiff's claim since May 2023.

52. Defendant also contended that the TUA absolved both Defendant and the Army from liability in the event of a termination for convenience, taking a position contrary to the Government in its Federal Circuit briefing.

53. What's more, Defendant's position would effectively and improperly leave Plaintiff without any remedy, which would render the underlying TUA illusory.

## CAUSES OF ACTION

### Count I - Breach of Contract (§§ 2 & 4(a))

54. Plaintiff realleges and incorporates by reference all factual allegations set forth in the foregoing paragraphs as if fully reproduced herein.

55. The TUA is a valid and enforceable contract between the parties.

56. Defendant's termination of the contract as described above constituted a breach of §§ 2 and 4(a) of the TUA in that it deprived Plaintiff the promised use of the Premises for the promised term of the TUA.

57. Defendant's breach of the TUA harmed and damaged Plaintiff, in the amount specified in Plaintiff's claims made to the Army.

### Count II - Breach of Contract (§ 13(a); Covenant of Good Faith and Fair Dealing)

58. Plaintiff realleges and incorporates by reference all factual allegations set forth in the foregoing paragraphs as if fully reproduced herein.

59. The TUA is a valid and enforceable contract between the parties.

60. Section 13(a) of the TUA permits Defendant to terminate the TUA for convenience at the direction of the Army.

61. Tennessee law implies in all contracts a covenant of good faith and fair dealing, including in Defendant's exercise of its right to terminate the TUA for convenience.

62. Defendant breached § 13(a) of the TUA and the covenant of good faith and fair dealing by refusing to reimburse Plaintiff for its damages and costs associated with the termination for convenience and by refusing to pursue such claim against the Army as a pass-through claim or assist Plaintiff in connection with that claim.

63. As a result of the above, Plaintiff was damaged in the amount specified in Plaintiff's claims made to the Army.

### Count III – Rescission and Restitution (In the Alternative)

64. Plaintiff realleges and incorporates by reference all factual allegations set forth in the foregoing paragraphs as if fully reproduced herein.

65. If the Court finds in favor of Defendant's position that Defendant is not required to pay damages to Plaintiff as a result of its termination of the TUA, then the TUA would be illusory because it would permit Defendant, at its option, to not perform.

66. An illusory agreement is voidable and in such circumstances, Plaintiff is entitled to rescission and restitution, or damages to put Plaintiff in the position it would have been had the contract not been completed.

67. Restitution includes the costs outlined to the Army as well as any rent paid by Plaintiff to Defendant associated with the TUA.

### Count IV – Breach of Contract (§ 13(d) - Violation of FAR Part 49)

68. Plaintiff realleges and incorporates by reference all factual allegations set forth in the foregoing paragraphs as if fully reproduced herein.

69. Section 13(d) of the TUA expressly incorporates "FAR Part 49, as it relates to fixed price contracts."

70. In refusing to pursue Plaintiff's pass-through claim with the Army, Defendant violated its obligations under FAR Part 49, including, but not limited to FAR §§ 49.104 and 49.108-1 through 108-8.

71. Defendant's violation of its obligations under FAR Part 49 has caused Plaintiff to suffer damages in the amount of the claim submitted to the Army to which it would have been entitled.

PREMISES CONSIDERED, Plaintiff Wolf Creek Railroad LLC respectfully prays that this Court:

A. Cause proper process to issue and be served on the Defendant or its agents for service of process;

B.      Grant Plaintiff judgment against Defendant for all damages incurred as a result of Defendant's breach of the Tenant Use Agreement;

C.      Grant Plaintiff judgment against Defendant for all damages incurred as a result of Defendant's violation of its obligations under FAR Part 49;

D.      Alternatively, enter a judgment rescinding the Tenant Use Agreement and ordering Defendant to pay restitution in an amount to put Defendant in the same position it was before entry into the Tenant Use Agreement; and

E.      Grant Plaintiff such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 20, 2024            Respectfully submitted,

**DICKINSON WRIGHT PLLC**

By: /s/ Stephen M. Montgomery
    Stephen M. Montgomery, #026489
    Fifth Third Center, Suite 800
    424 Church Street
    Nashville, Tennessee 37219-2395
    (615) 244-6538
    smontgomery@dickinson-wright.com

**GENOVA BURNS LLC**
James M. Burns (*pro hac vice forthcoming*)
Lawrence Bluestone (*pro hac vice forthcoming*)
30 Montgomery St., 3rd Fl.
Jersey City, New Jersey 07302
(973)535-4434
lbluestone@genovaburns.com

*Counsel for Plaintiff Wolf Creek Railroad LLC*

#17652268v3 (23586.005)