IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WOLF CREEK RAILROAD LLC,

    Plaintiff,

v.                                                                             No. 1:24-cv-01242-JDB-jay

AMERICAN ORDNANCE LLC,

    Defendant.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND
DENYING REQUEST TO AMEND COMPLAINT

*INTRODUCTION*

Before the Court is the motion of the Defendant, American Ordnance LLC ("AO"), to dismiss the first amended complaint of the Plaintiff, Wolf Creek Railroad LLC ("WCR"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Docket Entry ("D.E.") 37), to which Plaintiff has responded (D.E. 38) and AO has replied (D.E. 39). The parties have also filed supplemental briefs. (D.E. 41, 42.)

*JURISDICTION AND CHOICE OF LAW*

Subject matter jurisdiction for this action rests upon diversity of citizenship. (D.E. 33 ¶ 16); *see* 28 U.S.C. § 1332(a). Courts sitting in diversity are to apply the substantive law of the forum state. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The parties agree that the substantive law of Tennessee applies. "[I]n diversity cases applying Tennessee substantive law, [the court is] bound by published decisions from Tennessee courts." *Andujar v. Hub Grp. Trucking, Inc.*, 161 F.4th 1014, 1018 (6th Cir. 2025). Even in diversity cases, however, procedural

issues, including pleading standards, are governed by federal law. *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 613 (6th Cir. 2024).

## STANDARD OF REVIEW

Fed. R. Civ. P. 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Gentherm, Inc. v. Sargent & Greenleaf, Inc.*, 797 F. Supp. 3d 755, 759 (E.D. Mich. 2025). Rule 12(b)(6) permits the district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "the plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Adams v. Lexington-Fayette Urban Cnty. Gov't*, 154 F.4th 501, 507 (6th Cir. 2025) (internal quotation marks omitted). In determining whether a plaintiff has set forth a plausible claim, the court must construe the pleading in the light most favorable to the plaintiff. *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020). "A claim has facial plausibility when the well-pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mattera v. Baffert*, 100 F.4th 734, 739 (6th Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up), *reh'g denied*, 2024 WL 3206004 (6th Cir. June 10, 2024). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Iqbal*, 556 U.S. at 679 (cleaned up). The burden is on the moving party

to "explain[]—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Gordian Med., Inc. v. Accurate Healthcare, Inc.*, No. 3:24-cv-01021, 2025 WL 2813888, at *4 (M.D. Tenn. Sept. 30, 2025). The court's review of a complaint is generally limited to the four corners of the pleading, but the court may "consider documents attached to the complaint or incorporated by reference that are central to the claim." *Hester v. Chester Cnty., Tennessee*, 162 F.4th 780, 784 (6th Cir. 2025).

## FACTS ALLEGED

The facts alleged in the amended complaint as relevant to the instant motion, taken as true, are as follows. The United States Army Joint Munitions Command's Milan Army Ammunition Plant ("MLAAP") in Milan, Tennessee, has a history of use as an ammunition facility dating back to 1941. In 2008, AO entered into an Operations and Maintenance Contract with the Army (sometimes referred to herein as the "Government") for the purpose of providing operations and maintenance for the MLAAP.

In 2012, AO relocated all its ammunition production to another facility and MLAAP's production lines were shut down and transferred to inactive status. From 2012 to 2019, MLAAP's mission was to maintain capability to load, assemble, and pack medium-to-large caliber munitions and transfer the plant to a commercial distribution site. At that time, the Army instructed Defendant to solicit commercial tenants to use a portion of the MLAAP facility.

In 2017, Plaintiff submitted a proposal to lease the railyard and railroad facilities at the site. On or about October 19 of that year, AO provided WCR with a formal draft of a Tenant Use Agreement (the "TUA"), a copy of which is attached as an exhibit to the amended pleading. Before and after that date, Plaintiff spent large sums of money negotiating the TUA and preparing to perform under its provisions.

On April 16, 2018, Defendant submitted a Request for Use of the Facilities to the Army, which approved Plaintiff's proposal to operate a railyard at the MLAAP site. AO and WCR executed the TUA on June 5, 2018. The agreement had a term of twenty-five years, with the option of a twenty-five-year extension. Considering the TUA's lengthy term, WCR began making substantial capital investments in the leased property, which included entering into an agreement with Wells Fargo Railroad Corporation ("Wells Fargo"), operator of the largest fleet of any rail operating lessor in North America.

The TUA contained the following provision:

(a) <u>Convenience</u> – [AO] may terminate [the TUA] or portions thereof at any time by giving thirty (30) days written notice to [WCR] . . . in the event the Government determines that termination of [the TUA] or portions thereof is in the best interests of the Government . . .. In the event of termination under this provision, the termination will be at no cost to [AO] and [AO] shall be held harmless for any damages as a result of the termination.

*   *   *

(c) Notwithstanding the terms set forth in Article 13, authorization as herein provided is preliminary until full and final Facilities Use Approval is granted by the Government. [AO] may terminate this Agreement without liability to [WCR] should the Government not authorize use for the full term.

(d) This Article 13 shall be administered according to [Federal Acquisition Regulation ("FAR")] Part 49, as it relates to fixed price contracts.

(D.E. 33-1 ¶ 13.)

In March 2019, the Army's public affairs office announced that it intended to pursue declaring MLAAP as "excess to need" and to completely move stocks out of the site by the end of that year. (D.E. 33 ¶ 35.) On August 20, 2019, the Army informed AO by letter that it had ended the "current mission needs for the entirety of MLAAP." (<u>Id.</u> ¶ 31.) The Army directed AO to cease all operations and the pursuit of new tenants. On April 26, 2021, the Army notified AO that the TUA would have to be terminated as of December 31, 2021, a date later extended to July 2022.

4

Consequently, Defendant, acting under the Army's express instruction, terminated the TUA for convenience as of July 2022. WCR was then forced to incur additional costs associated with terminating its subcontract with Wells Fargo, closing out its operation, and turning the property over to the Government.

In May 2023, WCR submitted a certified claim letter to the Army seeking approximately $2.6 million in costs recoverable under the FAR, including proposal and preparatory costs, capital improvement costs, funds associated with settling a claim with Wells Fargo, and termination and departure expenses. After the Army failed to respond, Plaintiff brought suit against it in the United States Court of Claims in September 2023 (*Wolf Creek R.R. LLC v. United States*, Case No. 23-cv-01684-CNL, Ct. Cl.). On March 26, 2024, the Court of Claims dismissed WCR's complaint, finding that Plaintiff was precluded from pursuing a claim directly against the Government because the contracts at issue, including the TUA, failed to establish privity between the Army and WCR.

The Court of Claims' decision was appealed to the Court of Appeals for the Federal Circuit. The Army argued on appeal that AO is responsible for negotiating settlement agreements with tenant use contractors. Given the Army's position, WCR, on July 8, 2024, sent written notice to AO demanding that it pursue a pass-through claim on Plaintiff's behalf to the Government pursuant to FAR Part 49. A pass-through claim is defined as "one in which a prime contractor uses its privity with the United States to sponsor a subcontractor's claim for damages the subcontractor sustained as a result of an alleged breach of contract by the United States." *Irwin Cnty. v. United States*, 170 Fed. Cl. 355, 365 (Fed. Cl. 2024). Defendant refused, asserting, as is relevant here, that the TUA absolves it of liability in the event of a termination for convenience. The instant litigation ensued, alleging breach of contract and the implied covenant of good faith and fair dealing. In the alternative, Plaintiff seeks declaratory judgment and/or injunctive relief.

5

In an order entered November 25, 2025, after briefing on the instant motion had closed, the Federal Circuit affirmed the Court of Claims' decision in *Wolf Creek Railroad LLC v. United States*. *See Wolf Creek R.R. LLC v. United States*, Case No. 2024-1873 (Fed. Cir. Nov. 25, 2025); (D.E. 41-1).

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

<u>Count I – Breach of Contract and Implied Covenant of Good Faith and Fair Dealing.</u>

To succeed on a breach of contract claim in Tennessee, a plaintiff must establish (1) "the existence of a valid and enforceable contract," (2) "a deficiency in the performance amounting to a breach," and (3) "damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). Implied in every Tennessee contract is the duty of good faith and fair dealing. *Dick Broad. Co., Inc. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013). "[A] claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim." *Whitworth v. City of Memphis*, 689 S.W.3d 579, 588 (Tenn. Ct. App.), *appeal denied* (Aug. 9, 2023). It does not "create new contractual rights or obligations, nor can it be used to circumvent or alter specific terms of the parties' agreement." *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 643 (Tenn. Ct. App. 2006) (citation and emphasis omitted).

The parties acknowledge that the first prong of the breach of contract claim has been satisfied. As the Court finds the second element dispositive, it need not reach the third.

WCR alleges in its amended pleading as follows:

> 68. Defendant breached the express provisions of Section 13(d) of the TUA by refusing to reimburse Plaintiff for its damages and costs associated with the termination for convenience and by refusing to pursue Plaintiff's claims against the Army as a pass-through claim or assist Plaintiff in connection with that claim.

> 69.     Defendant's refusal to pursue Plaintiff's pass-through claim with the Army violated its obligation under FAR Part 49 as incorporated into [§] 13(d) of the TUA, including, but not limited to FAR §§ 49.104 and 49.108-1 through 108-8.

(D.E. 33 ¶¶ 68-69.)  In its responsive brief, WCR identifies the breach as "AO's failure to comply with the requirements of FAR Part 49."  (D.E. 38 at PageID 618.)

In determining whether a breach has occurred, the Tennessee courts have instructed that "[c]ontracts should be interpreted according to their plain terms, as those terms are ordinarily understood."  *Pharma Conf. Educ., Inc. v. State*, 703 S.W.3d 305, 311 (Tenn. 2024).  It is the position of the movant that WCR has failed to sufficiently plead a breach of contract under Tennessee law on the grounds that the plain language of § 13(d) does not establish an obligation on AO's part to pay damages directly to WCR or to sponsor a pass-through claim on Plaintiff's behalf in the event of a termination for Government convenience.  WCR insists, however, that "Section 13(d) commands that Article 13 'shall' be administered in accordance with FAR Part 49 and thus creates a mandatory contractual duty."  (D.E. 38 at PageID 620.)

Generally, the regulation "establishes policies and procedures relating to the complete or partial termination of contracts for the convenience of the Government[,] prescribes contract clauses relating to termination[,] and includes instructions for using termination and settlement forms."  48 C.F.R. § 49.000.  While it acknowledges that portions of FAR Part 49 (which it does not identify) are inapplicable, Plaintiff, in a twenty-two-page brief, fails to identify which provisions of FAR Part 49 *do* impose a contractual duty on AO to pay damages or pursue a pass-through claim, except to state that:

> some subsections expressly deal with the settlement of subcontract claims, including instructions on how prime contractors should settle claims with subcontractors, FAR § 49.108-3(a) ("Contractors shall settle with subcontractors in general conformity with the policies and principles relating to settlement of prime contracts in this subpart and subparts 49.2 or 49.3."); how those settlements can be approved for reimbursement by the Government, FAR § 49.108-3(c); and even

7

    when the Government will provide assistance in settling with a subcontractor, FAR § 49.108-7.

(D.E. 38 at PageID 622.)[1]

The FAR sections alluded to by the Plaintiff in the preceding paragraph state in their entirety as follows:

> Contractors shall settle with subcontractors in general conformity with the policies and principles relating to settlement of prime contracts in this subpart and subparts 49.2 or 49.3. However, the basis and form of the subcontractor's settlement proposal must be acceptable to the prime contractor or the next higher tier subcontractor. Each settlement must be supported by accounting data and other information sufficient for adequate review by the Government. In no event will the Government pay the prime contractor any amount for loss of anticipatory profits or consequential damages resulting from the termination of any subcontract (but see 49.108-5).

48 C.F.R. § 49.108-3(a);

> The [Terminating Contracting Officer ("TCO")] shall promptly examine each subcontract settlement received to determine that the subcontract termination was made necessary by the termination of the prime contract (or by issuance of a change order—see 49.002(b)). The TCO will also determine if the settlement was arrived at in good faith, is reasonable in amount, and is allocable to the terminated portion of the contract (or, if allocable only in part, that the proposed allocation is reasonable). In considering the reasonableness of any subcontract settlement, the TCO shall generally be guided by the provisions of this part relating to the settlement of prime contracts, and shall comply with any applicable requirements of 49.107 and 49.111 relating to accounting and other reviews. After the examination, the TCO shall notify the contractor in writing of (1) approval or ratification, or (2) the reasons for disapproval.

48 C.F.R. § 49.108-3(c); and

> In unusual cases the TCO may determine, with the consent of the prime contractor, that it is in the Government's interest to provide assistance to the prime contractor in the settlement of a particular subcontract. In these situations, the Government, the prime contractor, and a subcontractor may enter into an agreement covering the settlement of one or more subcontracts. In these settlements, the subcontractor shall

---

[1] Although the Court recognizes that other provisions of FAR Part 49 were cited in the amended pleading, they were not mentioned in WCR's response. Thus, the Court assumes any breach of contract claim based upon those provisions has been abandoned.

8

      be paid through the prime contractor as part of the overall settlement with the prime
      contractor.

48 C.F.R. § 49.108-7. None of these sections specifically require the prime contractor to pay damages to, or pursue a pass-through claim on behalf of, a subcontractor and Plaintiff has failed to allege or explain to the Court in its response which part, if any, of FAR Part 49 compels AO to do so.[2] Therefore, in the view of the undersigned, the allegations set forth in the amended complaint permit the Court to infer no more than "the mere possibility of misconduct" and have not "shown" that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 679 (cleaned up).

      WCR attempts to salvage its breach of contract claim by maintaining that § 13 is ambiguous because of the "uncertainty" surrounding the parties' intent in including § 13(d) in the TUA and seeks discovery on the meaning of the provision based on the parties' intent. (D.E. 38 at PageID 625.) "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). "The intent of the parties is presumed to be that specifically expressed in the body of the contract." *Id.* When the language is clear and unambiguous, the literal meaning of the contract governs, *Dick Broad. Co.,* 305 S.W.3d at 659, and the court need not look to extrinsic evidence, *IUE-CWA & Gen. Elec. Co.*, 745 F. App'x 583, 587 (6th Cir. 2018). "An otherwise unambiguous contract does not become ambiguous . . . merely because a party asserts that the terms of the agreement fail to state what it intended." *Gordian Med., Inc.*, 2025 WL 2813888, at *6 (cleaned up). "Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to

---

[2]To the extent any unreferenced section of FAR Part 49 may mandate direct liability of or pursuit of a pass-through claim by the prime contractor, it is not the province of the Court to find it.

different conclusions as to the meaning of the contract." *A & P Excavating & Materials, LLC v. Geiger*, 622 S.W.3d 237, 248 (Tenn. Ct. App. 2020) (quoting *Fisher v. Revell*, 343 S.W.3d 776, 779-80 (Tenn. Ct. App. 2009)). When a contract's terms are ambiguous, interpretation is a question of fact and not appropriately determined on a Rule 12 motion. *Gordian Med., Inc.*, 2025 WL 2813888, at *6. The Defendant must show to the Court that "the contract is unambiguous in all relevant respects, such that the Court may interpret it as a matter of law on a Rule 12(b)(6) motion to dismiss," and that the "Plaintiff has failed to plausibly allege a breach of contract (as the (unambiguous) contract is interpreted by the Court)." *See id.* at *7.

As set forth above, § 13(a) of the TUA states that, "[i]n the event of termination under this provision, the termination will be at no cost to [AO] and [AO] shall be held harmless for any damages as a result of the termination." (D.E. 33-1 ¶ 13.) This language is clear. As previously noted, nothing in the TUA pointed to by WCR requires Defendant to pay damages or pursue a pass-through claim in the event of a termination for convenience, including § 13(d). Therefore, the Court is unpersuaded that any ambiguity is present.

Accordingly, Plaintiff's breach of contract claim must be dismissed.[3] As a consequence, its implied covenant of good faith and fair dealing claim must also fail. *See Brooks v. Wells Fargo Bank, N.A.*, No. 3:12-0821, 2014 WL 345737, at *4 (M.D. Tenn. Jan. 30, 2014) (because plaintiff failed to sufficiently allege a breach of contract, his breach of the duty of good faith and fair dealing claim necessarily failed as well).

---

[3]Based on the Court's conclusion, it need not address Defendant's remaining arguments with respect to the breach of contract claim.

10

Counts II and III – Declaratory Judgment and/or Injunctive Relief.

In the alternative, Plaintiff seeks declarations from the Court, pursuant to the federal Declaratory Judgment Act (the "Act") that the TUA is an unenforceable illusory contract and that it violates public policy. It also requests injunctive relief under the Act in the form of an order compelling AO to pursue a pass-through claim.

The Act authorizes a court to declare a litigant's substantive rights "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The statute does not, however, "create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007). Absent a cognizable cause of action for breach of contract, WCR cannot sustain its declaratory judgment claim. *See Doe v. Univ. of Dayton*, Case No. 3:17-cv-134, 2018 WL 1393894, at *11 (S.D. Ohio Mar. 20, 2018) ("Because all of Plaintiff's substantive claims are subject to dismissal and the Federal Declaratory Judgment Act is procedural only and does not create an independent cause of action, [plaintiff's] claim for declaratory judgment will be dismissed.").

Similarly, a request for entry of an injunction is not a cause of action. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir.), *reh'g en banc denied* (Sept. 21, 2021). As WCR has failed to state a claim for breach of contract, it is not entitled to injunctive relief on that clam. *See id.*

Plaintiff's claims for declaratory and/or injunctive relief are DISMISSED.

*REQUEST TO AMEND COMPLAINT*

WCR requests, in the event the Court finds the amended complaint alleges insufficient facts as to any or all its claims, that, as an alternative to dismissal, it be permitted to file a second amended complaint. However, the Sixth Circuit has held that "a bare request in an opposition to a motion to dismiss [] without any indication of the particular grounds on which amendment is sought does not constitute a motion [to amend] within the contemplation of Rule 15(a)" of the

11

Federal Rules of Civil Procedure. *Louisiana Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (cleaned up). Absent a motion to amend, a defendant is "entitled to a review of the complaint as filed pursuant to Rule 12(b)(6)." *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)). "Plaintiffs are not entitled to an advisory opinion from the [c]ourt informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Id.* (quoting *Begala*, 214 F.3d at 784) (emphasis omitted). The request to amend is therefore DENIED.

## *CONCLUSION*

For the foregoing reasons, the motion to dismiss is GRANTED and this matter is DISMISSED in its entirety. The Clerk is DIRECTED to enter judgment.

IT IS SO ORDERED this 12th day of February 2026.

s/ J. DANIEL BREEN<br>UNITED STATES DISTRICT JUDGE